# NICHOLAS KOLTES v. GREAT NORTHERN RAILWAY COMPANY.[1]

May 7, 1915.

Nos. 19,149—(110).

**Diversion of surface water.**

It is *held* in this case, following Watre v. Great Northern Ry. Co. 127 Minn. 118, 149 N. W. 18, that the evidence is sufficient to sustain a finding that the acts of defendant caused a discharge of surface water upon plaintiff's land under such circumstances as to cause damage and to render defendant liable therefor.

Action in the district court for Grant county to recover $3,500 for damage caused by the diversion of surface water from its natural watershed. The answer alleged that in building its railway and in making excavations therefor, defendant exercised all the care that was reasonable under the circumstances and that any embankments, grades, ditches or excavations that were made were only

[1] Reported in 152 N. W. 641.

such as were necessary and, if any surface water escaped from its right of way upon the land of plaintiff, the same was caused not through any neglect on its part, but by reason of defendant's lawful acts in the employment of its own property for the purposes for which intended. The case was tried before Flaherty, J., and a jury which returned a verdict for $900. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*M. L. Countryman* and *A. L. Janes,* for appellant.

*E. J. Scofield,* for respondent.

HALLAM, J.

This is an action to recover damages on account of flowage of plaintiff's land by reason of negligent acts of defendant. Plaintiff recovered a verdict and defendant appeals. Plaintiff's land is a few miles west of a divide or watershed which runs nearly north and south through Grant county. This divide consists of a bank composed largely of sand and gravel. The land on the east side is higher than that on the west. Defendant, as an incident to the construction and operation of its road, cut through this divide, and it is claimed that the result of its various operations was to discharge surface water, in time of heavy rains, from the land east of the divide upon the lower land west of it, under such circumstances as to cause damage to the land to the west, and under such circumstances as to render defendant liable therefor. This precise question was recently considered by this court in the case of Watre v. Great Northern Ry. Co. 127 Minn. 118, 149 N. W. 18, and upon evidence substantially the same as in the case at bar, and this court sustained a finding of the jury that the acts of defendant did cause a discharge of surface water through the divide upon the land there in question, and that defendant was liable therefor. We follow that decision so far as applicable here and it controls this case, unless the difference in the location of the land of this plaintiff requires a different holding. We think it does not.

The land of Watre was the southwest quarter of the southwest quarter of section 3. It lies about two miles west of the divide and

south of defendant's track. Plaintiff's land is the southwest quarter of section 4, south of the track, and the northeast quarter of section 5, north of the track. It was accordingly west of the Watre land, but the slope was continuous from the watershed to plaintiff's land and beyond it. Water flowed freely from one side of the track to the other at various points. Part of plaintiff's land was farther north than the opening through the divide, whereas the Watre land was farther south than this opening. Defendant's counsel suggests that it was accordingly necessary for the jury in the Watre case to find that the water ran south, while in this case they must have found that it ran north. This is not an accurate summary of the situation. The general slope from the divide over these sections was a distinct slope to the west, at first 18.5 feet to the mile and gradually diminishing until on plaintiff's land in section 5 it is three feet to a half mile. As between the north and south lines of this tier of sections the difference in elevation is very slight. The south line is lower, but at places the difference is less than two feet to the mile. This grade or slope, though slight, would of course drain all water to the south if the surface were uniform. The evidence makes it apparent, however, that this grade or slope from north to south is not entirely uniform, and that there is such unevenness of surface that there were places where there was no water, while in other places there was water three feet deep. Under all these conditions it is not strange that a considerable volume of water flowing from the east should find its way over a large part of the surface of these sections, and the evidence of plaintiff shows that it did. One witness, when asked which way the water flows across the sections 4 and 5 in which plaintiff's land lies, said: "In section 4 it is nearly due northwest, and in section 5 when they strike about the quarter line in the middle of the section, it kind of zigzags, some going west, some northwest and some going southwest." We think the evidence is sufficient to sustain the verdict.

Order affirmed.